G4CTNAL1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JESSECA NALDO,

                    Plaintiff,                    New York, N.Y.

          v.                                      15 Civ. 2896 (PKC)

GLAZE TERIYAKI, LLC, PAUL KRUG
and DENNIS LAKE,

                    Defendants.

------------------------------x

                                                  April 12, 2016
                                                  9:20 a.m.

Before:

                    HON. P. KEVIN CASTEL,

                                                  District Judge

                              APPEARANCES

PARDALIS & NOHAVICKA, LLP
       Attorneys for Plaintiff
BY:  ARIADNE PANAGOPOULOU
       JOSEPH D. NOHAVICKA

HELBRAUN LEVEY & O'DONOGHUE LLP
       Attorneys for Defendants
BY:  KEVIN SEAN O'DONOGHUE
       ROBERT ONTELL

G4CTNAL1

1          (Jury not present)

2          THE COURT:  Good morning.  My clerk received an email

3    from counsel for the plaintiff last evening indicating that the

4    plaintiff had no proposed changes to either the verdict sheet

5    or the jury instructions as circulated yesterday, is that

6    correct?

7          MS. PANAGOPOULOU:  Yes, your Honor.

8          THE COURT:  Okay.  And I received an email, or my

9    clerk received an email this morning from defendants' counsel

10   indicating that the defendant had no proposed changes to either

11   the special verdict sheet or to the jury instructions, is that

12   correct?

13         MR. ONTELL:  That's correct, your Honor.

14         THE COURT:  All right.  Now let me raise an issue with

15   each of you.  It appears to me that there is no spread of hours

16   claim based on the testimony, is that correct?

17         MS. PANAGOPOULOU:  Yeah, we wouldn't mind having that

18   stricken now, yes.

19         THE COURT:  And obviously, the defendants have no

20   objection to that.

21         MR. ONTELL:  That's correct.

22         THE COURT:  It also appeared to me in the jury

23   instructions that I was needlessly wordy with the jury on

24   statute of limitations.  So on the statute of limitations with

25   regard to the FLSA claim, I need to instruct the jury as

G4CTNAL1

1    follows:  If you find that the plaintiff has proved that the

2    defendants are liable for unpaid wages under the FLSA, the

3    special verdict sheet will ask you to decide whether the

4    defendants acted willfully.

5          And then it would go on:  An employer acts willfully

6    if he knew or showed reckless disregard for the question of

7    whether its conduct was prohibited by the FLSA.  An employer

8    acts with reckless disregard when it acts or fails to act with

9    a conscious lack of concern for the consequences.

10         That is all I think I need to say to the jury on the

11   subject of statute of limitations, and I think introducing the

12   words "statute" and "limitations" and telling them whether you

13   recover for two years or three years is not anything they need

14   to know.  And correspondingly, there's nothing that needs to be

15   said on the New York claim that the jury has to take into

16   account.  Does the plaintiff agree?

17               MS. PANAGOPOULOU:  Yes, your Honor.

18               THE COURT:  Does the defendant agree?

19               MR. ONTELL:  We do.

20               THE COURT:  That's fine.  So that's going to come out.

21         Now a question I have, and this was a matter of great

22   discussion, I want to make sure that all concerned are on the

23   same page as to item C on page 3 of the special verdict.  This

24   is the special verdict sheet pursuant to Rule 49(a) of the

25   Federal Rules of Civil Procedure.  Is the plaintiff on board

G4CTNAL1

1  for these five questions?

2        MS. PANAGOPOULOU:  Yes, your Honor.

3        THE COURT:  All right.  Is the defendant on board?  Is

4  there an agreement that these are the five questions that the

5  Court should put to the jury?

6        MR. ONTELL:  Yes.

7        THE COURT:  All right.  Let me hand out the revised

8  jury instructions and the revised special verdict sheet, and

9  I'm going to have them marked as the next two Court exhibits.

10       So the instructions are Court Exhibit 5 and the

11  verdict sheet is Court Exhibit 6.  The instructions are marked

12  to show changes.

13       Now I guess a question I should put to you all is what

14  happens if the jury puts down a number in response to question

15  C1 and 2 but checks no on 3?

16       Let me hear from the plaintiff.

17       MS. PANAGOPOULOU:  This is why we were concerned

18  initially about the question, and we asked you if it would be

19  okay instead of at least 30 hours to have an average 30 hours.

20       THE COURT:  Well, I think there's a problem with the

21  word "average."  What if they find she worked an average of 30

22  hours?  You can't recover based on an average, can you?

23       MS. PANAGOPOULOU:  But at the same time, you can't

24  recover for at least as well.

25       THE COURT:  Here's the problem, I have asked maybe

G4CTNAL1

1    about seven times on this record whether the parties consent to

2    this language.  I asked it in written form, I asked it orally,

3    I just am now asking the question what happens if the jury

4    checks "no."

5            MS. PANAGOPOULOU:  And I think it's unfair that

6    defendant automatically wins just because they find that she

7    worked certain amount of hours but that it's not necessarily 30

8    or more.

9            THE COURT:  Then why do you consent to this verdict

10   sheet?

11           MR. NOHAVICKA:  Your Honor, may I be heard on this?

12           THE COURT:  Sure.

13           MR. NOHAVICKA:  We had a lot of discussions about this

14   particular issue also at our office, and I think it's fine like

15   this.  I don't think we need "average."  I think "average" puts

16   up a problem for all of us later on, so the 30 hours is fine

17   for us as it is.

18           THE COURT:  All right.  That's what I wanted to make

19   sure.  It's fine for the defendants?

20           MR. O'DONOGHUE:  Yes, your Honor, we went back and

21   forth, as I said, more than once.  We wrote it, stepped out and

22   came back, and we all agreed to it.  We like this language and

23   that's why we approved it.

24           THE COURT:  And the plaintiffs agree to it?

25           MR. NOHAVICKA:  Yes, your Honor, absolutely.

G4CTNAL1

1          THE COURT:  All right.  Fine.  As soon as our jury

2     arrives, we'll be ready to go.

3          MR. O'DONOGHUE:  Your Honor, while we're on the record

4     can I address one other issue?

5          THE COURT:  Yes.

6          MR. O'DONOGHUE:  As you know, at the close of

7     plaintiff's case yesterday we made our Rule 50 motion.  As the

8     Court also knows, a Rule 50 motion, even if denied, remains

9     active until the end of the trial and can be reviewed.

10          This is not something that we want to rewrite, but in

11     review of the Court's jury instructions on page 19, there's a

12     threshold question regarding whether or not the company, Glaze

13     Teriyaki LLC, is in fact an employer under the meaning of the

14     FLSA because it made more than $500,000.  I know the Court and

15     plaintiff are familiar with this.

16          As the Court will recall, there was no testimony or

17     evidence introduced, produced or adduced from any of the

18     witnesses that indicated that the threshold was met.  As a

19     result, the plaintiffs have failed to meet their burden on that

20     issue.  Not on the labor law issue, I understand, the New York

21     labor law, but as to the FLSA, that claim no longer can

22     survive.  There was never a stipulation made by us that they

23     made more than half a million dollars.  We did not produce any

24     discovery or tax returns.  There was no motion to compel such.

25     There is no evidence.  They never asked Mr. Krug regarding

G4CTNAL1

1    that, and as a result, without such proof, the threshold can't

2    be met.   The FLSA claim also must be stricken, and that also

3    goes to wage notice as well.

4              MS. PANAGOPOULOU:  May I be heard on that?

5              THE COURT:  Let me inquire:  Was this preserved in the

6    joint pretrial order as an issue?

7              MS. PANAGOPOULOU:  It was not, your Honor.

8              And may I mention something else, defendant Paul Krug

9    testified that this place had 15 full-time employees, and he

10   also testified that it had three locations, actually three

11   locations in New York City, and a location in San Francisco.

12             MR. O'DONOGHUE:  That's incorrect.

13             MS. PANAGOPOULOU:  And it was not in the JPTO.

14             MR. O'DONOGHUE:  Your Honor, this is a threshold legal

15   issue that the plaintiffs have the obligation of meeting.  All

16   they had to do was ask Mr. Krug:  Did your company -- Glaze

17   Teriyaki, LLC, is one restaurant, it's not a group of

18   restaurants, it's not a holding company, it's a restaurant on

19   Lexington and 54th Street.  It's one restaurant.  All

20   Mr. Nohhavicka had to do yesterday was say:  Mr. Krug, does

21   your company make in excess of half a million dollars?  And

22   Mr. Krug would have said yes or no, but he would have given an

23   answer.  At any time they could have compelled me, through an

24   order of this Court, to produce a tax return indicating the

25   amount of gross revenues produced.  They never did that.

G4CTNAL1

1          So as a result, as a threshold matter, they cannot

2     meet their burden.  I think it would be very confusing to the

3     jury.  I understand we're going to the jury today no matter

4     what, I'm sure, since they sat through you would like to have

5     them render a verdict either way, and so would I.  But as a

6     threshold matter on the FLSA, to charge them that they have to

7     find whether or not they met the threshold, with no evidence

8     before them, would seem to be an issue.

9          I don't think this has anything to do with the JPTO,

10    this is a threshold evidence matter that the plaintiff must

11    prove, just like they must prove that Mr. Krug is an employer

12    or anything else.  These are very standard legal things.

13    Plaintiff's counsel neglected to do so or forgot to do so.

14    That's unfortunate, but that knocks out the FLSA claim as a

15    matter of law.

16          Thank you, Judge.

17          THE COURT:  Let me hear from the plaintiffs.

18          MR. NOHAVICKA:  Your Honor, since my name was

19    mentioned, if it would be okay, I would like to handle this

20    portion of the argument.

21          THE COURT:  Sure.

22          MR. NOHAVICKA:  Here we go again with the joint

23    pretrial order and Mr. O'Donoghue's failure to abide by the

24    requirements of the joint pretrial order procedure.

25          If he had raised it as an issue, I certainly would

G4CTNAL1

1   have asked that question and we would have had proof of that

2   before asking the question.  It was unnecessary.  The joint

3   pretrial order, as Mr. O'Donoghue fails to accept, is the law

4   of the case.  I did not want to protract it, I do not like

5   wasting the Court's time or the jury's time on material that

6   has already been established, and it's enough.

7         He already got away with the prior issues with the

8   joint pretrial order, he doesn't like to follow the rules,

9   that's tough on him now.

10        THE COURT:  This is not a helpful way to argue this.

11        MR. O'DONOGHUE:  If I may briefly --

12        THE COURT:  No.  It's not a helpful way to argue it.

13  Do you understand that?

14        MR. NOHAVICKA:  Yes, I do.

15        THE COURT:  The question is whether or not the

16  plaintiff had a burden, whether or not by reason the joint

17  pretrial order that burden was excused, and if it was not

18  excused, was the burden met or based on the evidence that was

19  adduced, and is the evidence that was adduced sufficient if you

20  do have the burden.

21        MR. NOHAVICKA:  My response to that is although it was

22  not even mentioned in the joint pretrial order, that the jury

23  certainly heard enough to adduce that this is a company that

24  does more than $500,000 a year in business gross.  They have

25  businesses in Seattle, in San Francisco, and midtown Manhattan

G4CTNAL1

1   New York.  They testified to at least 15 employees in one

2   location.  That certainly is enough for a jury to reasonably

3   conclude that this company does more than $500,000 a year.

4   It's an interstate company, and that's what the jury has heard

5   and that's what the jury will find.

6            THE COURT:  All right.

7            MR. O'DONOGHUE:  May I respond briefly?

8            THE COURT:  Yes, you may.

9            MR. O'DONOGHUE:  In the joint pretrial order, it is

10   not the obligation of the defendants to let the plaintiffs know

11   what their burdens of proof are legally for each of their

12   claims.  In fact, these are their claims and they should know

13   this.  It was in their complaint, and we did not admit in our

14   complaint that we made more than $500,000 in our answer.  At no

15   time did they ever challenge our answer, which they could have

16   done.  At no time did they compel us to produce tax returns,

17   which they could have done.

18            In the joint pretrial order, on page 4, section 6

19   there are stipulations that we agreed to.  There was no request

20   and there was no stipulation on the joint pretrial order that

21   counsel is standing firm on where we said we admit that we make

22   more than half a million dollars a year.  And as a result, they

23   have failed to meet their burden.

24            And since the jury instructions were provided to us

25   early on in this case, and it's clearly stated on page 19,

G4CTNAL1

maybe it was sharp of me not to bring it up, but it's not my

obligation to let them know what they have to prove.  So as a

result, page 19 it says that they must prove that the

company -- again, this company is one restaurant.  That's why

we do separate LLCs, so that all the other LLCs that may be

owned cannot be brought in.  There is absolutely no way for a

lay juror to make any independent of estimation as to gross

sales of a restaurant.  They could think restaurants make

$100,000 or $10 million.  We have no idea because they have

never been given any proof.  This is a threshold FLSA issue.

It was never even raised by the plaintiff, as a result, the

FLSA claims have to be stricken as a matter of law, and we

renew our Rule 50 motion as to that.

          THE COURT:  Anything further from the plaintiff?

          MS. PANAGOPOULOU:  Nothing, your Honor.

          THE COURT:  All right.  I will take it under

advisement, and I will see you at 10 o'clock.

          Thank you all very much.

          (Recess taken)

          (Continued on next page)

G4CMNAL2

1          THE COURT:  Please be seated.  With regard to the

2    issue that was raised before the break regarding the threshold

3    issue, the statute is quite clear.  29 U.S.C. Section 206.

4    Every employer shall pay to each of his employees who in any

5    workweek is engaged in commerce or in the production of goods

6    for commerce, or is employed in an enterprise engaged in

7    commerce or in the production of goods for commerce, wages at

8    the following rates, and it continues.

9          The fact that the two are in the disjunctive has been

10   the subject of note by the United States Court of Appeals for

11   the Second Circuit in *Rogers v. City of Troy* and also in *Jacobs*

12   *v. New York Foundling Hospital*, 577 F.3d, 93.  In fact, it was

13   the case, as I think the Supreme Court noted in one of its

14   opinions, the Supreme Court opinion is *Tony & Susan Alamo*

15   *Foundation v. Secretary of Labor*, 471 U.S. 290, 295, note 8.

16   That prior to 1961, the act only covered individuals who were

17   engaged directly in interstate commerce.  And enterprise

18   coverage was substantially broadened with the 1961 amendments,

19   so they are in the disjunctive.  That's the way the charge is

20   written.  That's the way the verdict sheet reads.

21          And there was substantial evidence in this record that

22   the plaintiff at the behest of the defendants traveled to San

23   Francisco to assist in the opening of a facility in San

24   Francisco, easily meeting the interstate commerce requirement

25   or at least permitting the jury to find that it's met.

G4CMNAL2

1          Furthermore, the circumstantial evidence in this case

2     as to the number of locations, where the locations are, and the

3     number of employees and the number of members, investors in the

4     LLC, all taken together would permit the jury to infer that the

5     dollar threshold was met.  But as noted and as is clear from

6     the face of the statute, the dollar threshold does not need to

7     be met if the individual is engaged in commerce or in the

8     production of goods for commerce.  That's what I found based on

9     my research of the law.

10          If I've overlooked or missed anything, you are welcome

11     to bring it to my attention.

12          MR. O'DONOGHUE:  May I, Judge.

13          THE COURT:  You may.

14          MR. O'DONOGHUE:  Your Honor, with all due respect, I

15     agree with you as to the disjunctive as the either/or as to

16     interstate commerce.  No one is saying this business, which,

17     again, is one restaurant only, is not involved in interstate

18     commerce.

19          What we are saying is, and as your instruction reads

20     on page 19, if I could read it into the record:  In addition,

21     for the plaintiff to qualify as an employee of a "enterprise

22     engaged in commerce or the production of goods for commerce,"

23     the enterprise -- here, Glaze Teriyaki -- must have annual

24     gross sales of at least $500,000.  This is an additional

25     requirement on the plaintiff to show that for her to qualify as

G4CMNAL2

<pre>
 1    an employee.  We are not discussing the interstate commerce

 2    aspect.

 3         This whole case, Judge, as you know, comes down to

 4    whether or not in many respects she was an employee.  And for

 5    her to qualify as an employee of a business engaged in

 6    interstate commerce, the plaintiff has the burden of proving

 7    that that enterprise not only is engaged in interstate commerce

 8    as you've already read the statute, but, furthermore, has gross

 9    revenues over that threshold.

10         And I believe, and I've tried to get cases dismissed

11    in the past on this basis where the restaurant does not meet

12    this threshold, and I've been unsuccessful, but the reason that

13    that's in there is that Congress, my understanding, I have done

14    research on this, was trying to cap it so that a really small

15    business wouldn't be dragged into this type of a FLSA action.

16    Here all counsel had to do was ask.

17         THE COURT:  Your preferred way for the plaintiff to

18    meet their burden is not the only way they can meet their

19    burden.

20         MR. O'DONOGHUE:  You are right.  They could have

21    compelled us to produce tax records.

22         THE COURT:  So saying all they needed to do doesn't

23    help you at all.

24         MR. O'DONOGHUE:  It would have been an admission by

25    the principal of the LLC.
</pre>

G4CMNAL2

1          THE COURT:  That may be the case, but that doesn't

2     answer whether or not the record permits the jury to infer that

3     it is a business meeting the statutory threshold.

4          MR. O'DONOGHUE:  You are right.  So then the question

5     is not whether or not in fact the company does in fact gross

6     over that number.  It's whether or not there has been evidence.

7     If the Court is denying the motion on the grounds that it feels

8     there is circumstantial evidence allowing the jury to infer it,

9     I would like permission to raise it on summation.

10          THE COURT:  So far I have not restricted anybody from

11     raising anything on summation, so that's number one.  You have

12     glossed over, in my view, the alternative means to meet the

13     jurisdictional threshold.

14          MR. O'DONOGHUE:  I understand what you are saying.  It

15     is our position, and obviously it's preserved for the record,

16     that in any of these actions -- I'll be frank with you, your

17     Honor.  I have more than this case in front of you and we

18     generally will stipulate, in order to avoid producing financial

19     documents, whether or not a company does meet that threshold.

20          THE COURT:  No.  We are not communicating at the

21     moment.  I understand.  But the disjunctive alternative is that

22     this employee was engaged in commerce or the production of

23     goods for commerce.  That's the alternative for a business that

24     is under the statutory threshold and states a claim, correct?

25          MR. O'DONOGHUE:  I would respectfully disagree.

G4CMNAL2

1          THE COURT:  Now I understand where we are.  So it is

2     your view that they are not disjunctive; that they are

3     conjunctive.  Is that your position?

4          MR. O'DONOGHUE:  I'm saying, your Honor, I agree with

5     you, that there are two ways to show an enterprise is engaged

6     in interstate commerce.

7          THE COURT:  No, no, no.  That is not what I am saying.

8     That's not what I said.  I will read to you, again, the

9     statute.  It's not two ways to show that an enterprise is

10    engaged in commerce.  That's not what the statute says.  It

11    says:  Every employer shall pay to each of his employees, who

12    in any workweek is engaged in commerce or in the production of

13    goods for commerce; that is, the employees are engaged in

14    commerce or in the production of goods for commerce.  Then

15    there is a semicolon and the word or.  Is employed in an

16    enterprise engaged in commerce or in the production of goods

17    for commerce.  A business that grosses $100,000 a year could

18    owe an employee who is engaged in commerce or in the production

19    of goods for commerce a minimum wage, even though that employer

20    is not engaged in commerce or the production of goods for

21    commerce as defined by the threshold.  Is that not the law?

22         MR. O'DONOGHUE:  My reading, respectfully, of the law

23    is that in either situation that enterprise must gross a

24    minimum of half a million dollars a year in either regard in

25    order for it to qualify for the FLSA.  Your Honor, again, that

G4CMNAL2

1    is how your jury instruction reads.  It reads as an additional

2    qualification.

3              THE COURT:  I'm reading on page 18.

4              MR. O'DONOGHUE:  I'm looking at page 19, Judge.

5              THE COURT:  I'm looking at page 18.  The second

6    element of the claim that the plaintiff must prove by a

7    preponderance of the evidence is that she was an employee

8    engaged in commerce or the production of goods for commerce or

9    was employed by an enterprise engaged in commerce or in the

10   production of goods for commerce.  Then I go on where I say:

11   To qualify as an employee of an enterprise engaged in commerce

12   or the production of goods for commerce, Glaze Teriyaki must

13   have annual gross sales of at least 500,000.  That speaks to

14   the second alternative.

15             MR. O'DONOGHUE:  Your Honor, I read that.  If you look

16   at the words engaged in production of goods for commerce or

17   enterprise engaged in production of goods for commerce, there

18   is a reason it's a separate paragraph that says in addition

19   because it's my understanding --

20             THE COURT:  There are two ways that the plaintiff can

21   meet her burden.  One, she can show she was an employee engaged

22   in commerce or in the productions of goods for commerce.  The

23   second way is by showing the enterprise was engaged in

24   commerce.  And if she is relying on the second way, she must,

25   in addition, show that the enterprise had annual gross sales of

G4CMNAL2

1    500,000.

2              MR. O'DONOGHUE:  Would the Court then be saying that

3    they could not prove that second section; they can only prove

4    engaged in production of goods for commerce because the

5    $500,000 threshold --

6              THE COURT:  You didn't hear me.  Were you here this

7    morning?  Did you hear what I said two minutes ago?

8              MR. O'DONOGHUE:  Yes, your Honor.  I believe I did.

9              THE COURT:  I said that there is circumstantial

10   evidence in this record from which the jury can infer that the

11   annual gross sales prong of at least $500,000 is met.  That's

12   what I've held.  And I think I was pretty clear about that.

13             MR. O'DONOGHUE:  You were.

14             THE COURT:  What's your question?

15             MR. O'DONOGHUE:  I believe, and I'll just state this

16   for the record and I'll let it go because I understand you have

17   made your ruling, I believe that the law itself requires a

18   showing by the plaintiff that it actually, whether by admission

19   or by introduction of evidence, there is an actual showing of a

20   factual basis that the threshold, and in any legal issue there

21   is a threshold, that the threshold itself is met.  I don't

22   believe that can be met by inference or circumstantial

23   evidence.  I believe it is a requirement that it is proven as a

24   threshold issue.

25             THE COURT:  And it cannot be proven by circumstantial

G4CMNAL2

1    evidence.  That's your position.

2          MR. O'DONOGHUE:  That's why, your Honor, it says must

3    have.  It doesn't say that they can say, well, either it

4    doesn't or it doesn't.  It says must.  As I understand the law

5    as it is written, it is a factual threshold requirement that

6    they prove that, not that the jury says, well, he probably

7    makes it.

8          THE COURT:  No.  The jury would have to find it as a

9    fact.  They would have to find it as a fact.  But this is one

10   of the rare instances where -- I think the one that I'm aware

11   of that can't be proven by circumstantial evidence may be

12   treason.  It may be the one thing in the law that can't be

13   proven.  Murder can be proven by circumstantial evidence.  Most

14   any fact in any case can be proven by circumstantial evidence.

15   You have put to me that this is one of those exceptions where

16   it cannot be proven by circumstantial evidence.  I've heard you

17   and I respectfully disagree and have ruled otherwise, that it

18   can be proven by circumstantial evidence.  And as to the

19   disjunctive, if you have a case you would like me to look at,

20   please bring it to my attention.  I have cited to you the case

21   law and the statutory language, and that's the basis on which

22   I'm relying.

23          Now, I'm not at the moment needing to address the

24   issue of the joint pretrial order.  That can be discussed at

25   another time.  But before your client can be found liable, the

G4CMNAL2

jury must find number 2.  Before you can be liable under the

FLSA, they must find the answer to question A2 is a yes.

    Are our jurors in?

    THE DEPUTY CLERK:  Yes.

    THE COURT:  One second.

    Bring our jurors in, please.

    (Jury present)

    THE COURT:  Good morning, ladies and gentlemen.  As I

indicated to you yesterday, we are now going to have our

summations, or closing arguments in this case.  And in this

situation the parties will have the opportunity to give you

their view of what they believe the evidence shows.  And I have

advised the attorneys as to how I am going to instruct you at

the close of the case.  And you may hear a lawyer say something

like, I expect that the judge will tell you.

    Now, if any lawyer states a principle that is

different than what I instruct you is the law, it is my

instructions that you will follow, not their prediction of what

they believe I will say.  And the same thing with evidence.  If

any lawyer says something like, well, you heard from the

witnesses or you didn't hear from the witnesses and no witness

testified to this, that, or the other thing, and your

recollection is different on that subject, it is your

recollection that controls, not what a lawyer says about the

evidence in their closing argument.

G4CMNAL2                    Summation - Mr. O'Donoghue

1          With that said, Mr. O'Donoghue, would you like to

2     proceed.

3          MR. O'DONOGHUE:  I would, Judge.  Thank you.

4          Good morning, ladies and gentlemen of the jury.  Once

5     again, my name is Kevin O'Donoghue, and along with Robert

6     Ontell, it's been my pleasure to defend my clients -- Paul

7     Krug, Dennis Lake and Glaze Teriyaki -- in this case.

8          Just yesterday we talked about promises and I told you

9     what they were promising you would not add up and I'm asking

10    you again today to do that math and find that their claims do

11    not add up.  I made you a few promises myself yesterday.  I

12    promised you we would be quick.  We are here at the next

13    morning, very quick.

14         Why did I tell you this would be quick?  Because there

15    is basically no evidence.  There is no proof, there is no

16    evidence.  What did you see?  What did they put into evidence?

17    You are going to look at, and you'll have everything, as the

18    judge told you yesterday.  You are going to have everything in

19    front of you.

20         What did you see?  You saw a credit card that the

21    company paid for so she can run errands.  You saw a business

22    card that she made so she could hand it out to people.  And you

23    saw one e-mail, written 15 months into her alleged employment,

24    where she in sum and substance said, I'd like you guys to pay

25    me, if you could, and they have no response.  And then she

worked an additional 15 months after that before she left and
went to Europe.  That was her testimony.  I hope you agree.  I
saw a lot of you taking notes and I'm sure you can check that
when you get back and deliberate.

        When you deliberate, think about that.  What did you
see?  Where is the proof?  She admitted there were no tax
documents.  She admitted there were no pay stubs.  She admitted
she didn't keep her time.  And then she testified, the
plaintiff herself, and Mr. Krug testified, that every other
employee in the restaurant, one restaurant, 54th and Lex, one
restaurant, everyone else, and she said it too, clocks in,
clocks out, paid by ADP, gets a check every week or every other
week.  Every other person.  Because every other person that
works for Glaze Teriyaki is an employee.

        The judge will instruct you on the meaning, the
definition of employee.  No one has ever said that they don't
know who she is.  This isn't a case of who is this person.
This is a case of someone who initially wanted to learn some
things and did learn some things.  Didn't graduate from
college, like she said she would, and stayed on in an
unreliable role where she did projects here and there.

        She told you about her social media management of the
brand.  Ask yourselves.  At any time yesterday did you see one
Facebook post?  Did you see one photograph on Instagram?  Did
you see one tweet from Twitter?  There may be other platforms

G4CMNAL2                 Summation - Mr. O'Donoghue

1   I'm not familiar with, but you get the idea.

2          She says she worked 30 or more hours a week doing

3   this.  Did you see any proof of that?  Anything?  If she did

4   this, why, why would she not give you printouts of the Facebook

5   posts, printouts of the Instagram pictures, printouts of the

6   tweets?  Why did they only give you two e-mails; one, the

7   15-month request to be paid and the other, if you read it, it's

8   long, rambling, a list of different things that maybe we could

9   do in different platforms, which Mr. Krug said we are not

10  implementing.  You heard this.

11         You heard that there was a professional PR firm that

12  does work with this restaurant.  You heard that there is a

13  professional branding and marketing company, Project 13, that

14  does all the branding and marketing.  And you heard Ms. Naldo

15  say, well, she did the little things.  She helped out.  She

16  helped out here and there.  That's right.  She helped out here

17  and there.  But did she do 30 hours a week?  Does that add up

18  to you, 30 hours a week?  And you didn't see any evidence of

19  that?  You didn't see anything.  You saw two e-mails and no

20  posts.  That's all she did.  Everyone else in the restaurant

21  was paid.

22         I want you to think about a couple of things because

23  these cases go by the law and the law has certain requirements.

24  I'm not allowed to talk to you about the law itself.  But the

25  law has certain requirements.  You will apply the facts that

G4CMNAL2                    Summation - Mr. O'Donoghue

1    you heard to the law that the judge gives you.  You have to

2    decide if she was an employee under what the law classifies as

3    an employee.  We say she was not.  She doesn't meet any of the

4    requirements and, you may recall, I asked her a series of

5    questions, 10 or 15 questions, about things like, did you have

6    to request time off?  No.  I just let them know if I was going

7    away.

8            How many of you could just call up your employer and

9    say, hey, by the way, I am not going to come in next week; I am

10   going to go to Savannah.  None of you.  Because you have jobs.

11   You are employees.  Or if you had employees, if one of your

12   employees did that, you would probably terminate them.  How

13   many of you don't have to be at meetings, don't have to be at

14   work at a certain time, until a certain time.  None of you,

15   most likely, because you are employees.  Or if you have

16   employees, you require that.  All of the indicia of an

17   employee, which you all know, should be met and they have not

18   shown you one shred of it except a credit card and a business

19   card.  That's it.  That's all you have to show that she was

20   employed at least 30 hours a week.  That doesn't add up.

21           You never heard any evidence at all as to whether or

22   not this business was engaged in what's called interstate

23   commerce.  There was no evidence of that whatsoever, I submit

24   to you.  This is one restaurant in New York City.  You never

25   heard any evidence that this restaurant makes the minimum

G4CMNAL2                    Summation - Mr. O'Donoghue

1    threshold amount of half a million dollars, $500,000, so that

2    she would qualify as an employee of an enterprise engaged in

3    that commerce.  Did you see a tax record?  No.  Did you see a

4    tax return?  No.  Was Mr. Krug asked that question?  No.  That

5    threshold wasn't met.  For all of those reasons I submit to you

6    that you could look at that on a one-issue basis, was she an

7    employee, yes or no, under the law that the Court will give

8    you, and the answer is no and there is no evidence to support

9    it.

10            Now, a few other things.  The only real evidence that

11   you heard is testimony from Ms. Naldo herself, herself, what we

12   call self-serving testimony.  She came and said, I worked

13   there, I did all these hours, I have no way of proving it, I

14   can't give you my hours, I didn't keep time.  I don't have any

15   proof.  I don't have the e-mails.  I don't have anything to

16   actually show you how I spent those 30 hours a week for 30

17   months.  I don't have anything to show you that, but you should

18   take my word for it.

19            Ms. Naldo is a very nice young lady.  I don't mean to

20   say anything disparaging about her and I won't.  But I'll ask

21   you to assess her credibility and I'll ask you to assess her

22   bias in coming here and filing an action against the company

23   she allegedly worked for 30 months without pay, approximately a

24   year after she stopped working.  Why would she do that?  Why

25   would she go over four years before she brings a claim?  How

1    many of you would go a week, two weeks, a month, without filing

2    that claim if you had a real claim?  If you were a real

3    employee, wouldn't you quit?  Wouldn't you stop?  Wouldn't you

4    demand payment or leave?  If you were an employee, I submit to

5    you, that's what you would do.

6           She came in and she said, oh, yeah, I'm in college.

7    When I asked her, well, it's been nine years, I still haven't

8    graduated.  St. John's is a fine school, but it doesn't usually

9    take people nine years to graduate.  Nine years.  Still hasn't

10   graduated.  I was in school full time.  Then she said, I got

11   student loans and I withdrew from a lot of classes and I failed

12   otherwise.  Because my job was more important, my unpaid

13   internship was more important than my college education.

14          She then said, and I'll remind you, that despite

15   having no income and despite not being a full-time student, she

16   took lots of trips.  I'll ask you to consider that as well.

17   How many of you could make no money and then go on trips to

18   Mexico, to Savannah, to Belize, everywhere else she went.  I

19   don't recall them all.  California, Seattle.  She took trips.

20   My mom is in San Francisco.  I am going to Mexico with my

21   friends.  I'll let you guys know when I'm back.

22          Think about that.  Think about her credibility.  Think

23   about the person who is bringing this case.  Think about the

24   person who is asking you to believe her story and then compare

25   that to Mr. Krug.

1           Mr. Krug testified, I thought, very credibly about his

2    business, about what he did.  He didn't lie to you.  He didn't

3    say, I have never heard of this person.  He didn't say, I have

4    never met her before.  He said, she was a nice girl, she came

5    into my restaurant, I thought she could use some experience.

6    She wanted to build up her résumé and I tried to help her out,

7    and he did.  That's exactly what he told you.  Nobody is saying

8    anything different.

9           That doesn't make her an employee under the law.

10   Think about it.  Think about the fact that since the time that

11   Ms. Naldo left the employ of Glaze, she has never had another

12   job anywhere near this industry.  She told you she was a

13   part-time server and now she is not working.  She is thinking

14   about some offers that she might have.  Think about that.

15   Think about the two people that you heard from and assess their

16   credibility.  Look at the bias.  What does Mr. Krug have?  He

17   has no reason to lie to you.  He has no reason to not be

18   credible.

19          What does Ms. Naldo have?  Apparently, no money.

20   Apparently, she has an incentive to come in here and try to get

21   you, the jury, to award her money for work she never did.

22   Think about it.  Think about what's happening here.  Think

23   about the way this has been presented to you, no evidence, no

24   proof; just, I'd like some money.  That's not the way this

25   works.  That's not the way the world works.  We all have to

G4CMNAL2                  Summation - Mr. O'Donoghue

1    work.  Everyone in here works.  We are employed.  We are doing

2    something.  All of you are taking time out of your employment

3    to be here.  I would like you to consider all of those factors

4    when you deliberate.

5          This is a case, as I told you before, that would not

6    add up if we looked at everything.  I'm sure you were all

7    waiting for some smoking gun.  I'm sure you were waiting for

8    the CSI black light to come out and prove to you, aha, here is

9    the claim, but you didn't see that.  You didn't see anything.

10   All you are going to see are those e-mails, couple of

11   photocopies, and you are going to have to look and assess it.

12   And then you are going to have to assess these claims made by

13   the plaintiff.

14         And after you've assessed all those claims, after you

15   have considered the evidence, I am going to ask you to consider

16   whether or not the promises that counsel made to you yesterday

17   morning were fulfilled.  I submit to you that none of her

18   promises were fulfilled.  I submit to you that all of the

19   defendants' promises to you were fulfilled, and I submit to you

20   there is absolutely no evidence and there should be no recovery

21   by the plaintiff.  Please consider that and I thank you again

22   for your time and your service.

23         THE COURT:  Thank you, Mr. O'Donoghue.

24         Ms. Panagopoulou, you are going to deliver the closing

25   argument.

1            MS. PANAGOPOULOU:  Yes.

2            THE COURT:  Thank you.

3            MS. PANAGOPOULOU:  May it please the Court, counsel,

4   people of the jury, yesterday I stood here and I talked to you

5   about a fundamental principle, that if you work, your boss

6   should pay you.  You have just heard from defense counsel say

7   to you that Jesseca shouldn't be entitled to be paid.  There is

8   no proof that she was ever an employee.

9            Well, let's have a look at the proof that was

10  presented to you yesterday.  A company credit card given to her

11  to spend on her business expenses.  A company business card

12  given to Jesseca so she can approach new clients on behalf of

13  the company.  A company business card that does have Jesseca's

14  e-mail address, Jesseca@GlazeTeriyaki.com.  An e-mail from

15  Jesseca to defendants, Paul Krug and Dennis Lake, asking to be

16  paid for her extensive work.  Paul Krug's reply:  Let's sit

17  down and talk about it.  How much money do you want?  Jesseca's

18  response that I will read:  I guess I'm around an average of

19  30, talking about her hours that she worked, in writing, to the

20  defendants.  An e-mail from Jesseca to one of the key,

21  essential business partners of Glaze Teriyaki, Gita McCutcheon,

22  set forwarding in detail all of her business proposals.  And

23  Paul Krug's response, good job.

24           And, finally, the testimony of Jesseca Naldo, who told

25  you that for two and a half years she worked for more than 30

G4CMNAL2                    Summation - Ms. Panagopoulou

1    hours per week for the defendants, who told you about her

2    expansive duties, from catering to busing to making deliveries,

3    to marketing, to being flown all the way to San Francisco to

4    assist in the opening of a brand-new location.  The fact that

5    Paul Krug never disproved any of those statements, he never

6    denied that Jesseca worked for him for two and a half years.

7    He didn't deny that Jesseca was flown to San Francisco or she

8    assisted in the grand opening of the new location.  And when he

9    was asked, how many hours per week do you think Jesseca worked,

10   his reply was, I don't know.

11           Now, as far as Dennis Lake is concerned, who is also a

12   named defendant in this lawsuit, he didn't even testify to you

13   yesterday.

14           MR. O'DONOGHUE:  Objection, your Honor.

15           THE COURT:  Overruled.

16           MS. PANAGOPOULOU:  Defense counsel maintains that

17   Jesseca doesn't have a record of all her hours worked.  But an

18   employee is under no duty to keep business records, time

19   sheets, or anything like that.  That's the employer's duty.

20   Defense counsel maintains that Jesseca doesn't have evidence of

21   her perhaps cleaning tables or working at the cashier.  How is

22   she supposed to have evidence of that?  Was she supposed to

23   take pictures while she was working?  Defense counsel maintains

24   that Jesseca doesn't have W-2 forms or doesn't have pay stubs

25   from the defendants.  Well, if she did have W-2 forms and if

G4CMNAL2                    Summation - Ms. Panagopoulou

1    she did have pay stubs, then we wouldn't even need to be here

2    today now, would we.

3            Defense counsel maintains that, and for the purposes

4    of the law, that this was not an employee engaged in interstate

5    commerce.  You will hear further from the judge explaining to

6    you what that terminology means.  All I'm going to say to you

7    is something they didn't deny either, she flew to San Francisco

8    to represent the company.

9            Defense counsel asks you why didn't she bring this

10   lawsuit sooner?  Why didn't she?  Why would a 27-year-old woman

11   hesitate to bring a lawsuit like that?  Because she told you

12   she was ashamed.  She wasn't after it for the money.  She loved

13   her job at Glaze Teriyaki.  The e-mail that was shown to you

14   yesterday.  I'd love to continue to devote as much time as I

15   have to Glaze.  Her own words.  She loved working there.  At

16   one point she loved the defendants.  She loved working with

17   them.  This wasn't easy for her.  And because she hesitated to

18   bring this forward, now she shouldn't recover?  They are

19   talking about evidence.

20           Let's talk about the evidence that the defendants have

21   provided.  Jesseca took a few trips here and there.  Jesseca

22   didn't graduate from college.  Jesseca doesn't have a college

23   degree.  Jesseca is really struggling with school.  Since when

24   in this country does a worker not deserve to be paid because

25   they are a bad student?  Since when do F students have no

G4CMNAL2                    Charge

1    rights as opposed to A students?  After all, if they were so

2    dissatisfied with her performance, they can simply fire her.

3    Paul Krug testified that Jesseca is nonessential, is

4    unreliable.  Why would you give a nonessential, unreliable

5    intern a company credit card?  Why would you let her represent

6    herself as part of the company to a key business partner?  Why

7    would you fly her all the way to San Francisco to assist in the

8    opening of a new location?  Why would you entrust her with the

9    marketing duties of a business that is looking to grow and that

10   is so essential to its growth?  I will tell you why.  Because

11   Jesseca was essential.  That's why they didn't fire her.  And

12   that's why they strung her along.

13           People of the jury, this was no internship.  Jesseca

14   was an unpaid employee.  Why would they keep her for two and a

15   half years to work for more than 30 hours per week if she was

16   no good?  Now, that doesn't add up.

17           It is now in your hands when you go back to that jury

18   room to make your call.  Thank you.

19           THE COURT:  Thank you.

20           Ladies and gentlemen, you have now heard the closing

21   arguments of the parties and you reached the point where you

22   are about to undertake your final function as jurors.  You paid

23   careful attention to the evidence and I am confident that you

24   will act together with fairness and impartiality to reach a

25   just verdict in the case.

G4CMNAL2                    Charge

 1              It has been my duty to preside over the trial and to

 2     decide what testimony and evidence was relevant under the law

 3     for your consideration.  My duty at this point is to instruct

 4     you as to the law.  It is your duty to accept these

 5     instructions of law and to apply them to the facts as you find

 6     them.

 7              On these legal matters you must take the law as I give

 8     it to you.  If any lawyer has stated a legal principle

 9     different from any that I state to you in my instructions, it

10     is my instructions that you must follow.  You must not

11     substitute your own notions, your opinions of what the law is

12     or ought to be.

13              You are not to infer from any of my questions or any

14     of my rulings or anything else that's said or done during this

15     trial that I have any view as to the credibility of the

16     witnesses or how you should decide the case.

17              I will give you the typed text of these instructions

18     for your use in the jury room.  It is possible that there will

19     be a slight variance between the words I have spoken and the

20     typed text that I will give you.  The words I have spoken

21     control over the typed text.

22              As members of the jury, you are the sole and exclusive

23     judges of the facts.  You pass upon the evidence.  You

24     determine the credibility of the witnesses.  You resolve such

25     conflicts as there may be in the testimony.  You draw whatever

reasonable inference you decide to draw from the facts as you
have determined them.  You determine the weight of the
evidence.

          You have take the oath as jurors and it is your sworn
duty to determine the facts and to follow the law as I give it
to you.

          It is the duty of the lawyers in this case to object
when the other side offers testimony or other evidence that the
lawyer believes is not properly admissible.  Therefore, you
should draw no inference from the fact that there was an
objection to any evidence.  Nor should you draw any inference
from the fact that I sustained or overruled an objection.

          From time to time, I have had side bar conferences
with the lawyers, as well as other conferences out of your
hearing.  These conferences involved procedural and other
matters, and none of the events related to these conferences
should enter into your deliberations at all.

          Your verdict must be solely upon the evidence
developed at trial or the lack of evidence.  It would be
improper for you to consider any personal feelings you may have
about the plaintiff or any defendant's race, religion, national
origin, sex or age.  The parties in this case are entitled to a
trial free from prejudice and our judicial system cannot work
unless you reach your verdict through a fair and impartial
consideration of the evidence.

 1          Similarly, under your oath as jurors you are not to be

 2   swayed by sympathy.  Once you let fear, prejudice, bias or

 3   sympathy interfere with your thinking, there is a risk that you

 4   will not arrive at a just verdict.  Your verdict must be based

 5   exclusively upon the evidence or the lack of evidence in the

 6   case.

 7          You should consider and decide the case as a dispute

 8   between parties of equal standing in the community and of equal

 9   worth.  All parties are entitled to the same fair trial at your

10   hands.  All parties stand equal before the law and are to be

11   dealt with as equals in this court.

12          In a civil case such as this, the plaintiff has the

13   burden of proving all elements of her claim by a preponderance

14   of the evidence.

15          What does a preponderance of the evidence means?  To

16   establish a fact by the preponderance of the evidence means to

17   prove that the fact is more likely true than not.  A

18   preponderance of the evidence means the greater weight of the

19   evidence.  It refers to the quality and persuasiveness of the

20   evidence, not the number of witnesses or documents.  In

21   determining whether a claim has been proven by a preponderance

22   of the evidence, you may consider the relevant testimony of all

23   witnesses, regardless of who may have called them, and all the

24   relevant exhibits received in evidence, regardless of who may

25   have produced them.

G4CMNAL2                         Charge

1              If, after considering all of the testimony, you are

2      satisfied that the plaintiff has carried her burden on each

3      essential point as to which she has the burden of proof, then

4      you must find in her favor.  If after such consideration you

5      find that the credible evidence on a given issue is evenly

6      divided between the parties, that is, it is equally probable

7      that one side is right as it is that the other side is right,

8      or that the evidence produced by the plaintiff is outweighed by

9      evidence against her claims, then you must decide that issue

10     against the plaintiff.  That is because the party bearing the

11     burden of proof must prove more than simple equality of

12     evidence.  The party must prove each element of the claim by a

13     preponderance of the evidence.  On the other hand, the party

14     with the burden of proof need prove no more than a

15     preponderance.  So long as you find that the imaginary scales

16     of justice tip, however slightly, in favor of the party bearing

17     the burden of proof, that what she claims is more likely true

18     than not, then the element will have been proven by a

19     preponderance of the evidence.  But if the scales are equal,

20     that is, they don't tip either way, or they tip in favor of the

21     defendant, then you must find that issue in favor of the

22     defendants.

23             The evidence in this case is the sworn testimony of

24     the witnesses and the exhibits received into evidence.

25             By contrast, the questions of the lawyers are not to

1   be considered by you as evidence.  It's the witnesses' answers

2   that are evidence, not the questions standing alone.

3           Testimony that has been stricken or excluded by me is

4   not evidence and may not be considered by you.

5           Arguments made by lawyers are not evidence.  What they

6   have said to you in their openings and in their summations is

7   intended to help you understand the evidence to reach your

8   verdict.  If, however, your recollection of the facts differs

9   from the lawyers' statements, it's your recollection that

10  controls.

11          Any statements I may have made during the trial does

12  not constitute evidence.

13          To constitute evidence, exhibits must be received in

14  evidence.  Exhibits marked for identification but not admitted

15  are not evidence, nor are materials brought forth only to

16  refresh a witness' recollection.

17          It is for you alone to decide the weight, if any, to

18  be given to the testimony you have heard and the exhibits you

19  have seen.

20          Generally, there are two types of evidence you may

21  consider in reaching your verdict.  One type is direct

22  evidence.  Direct evidence is when a witness testifies about

23  something he or she knows by virtue of his or her own senses,

24  something he or she has seen, felt, touched, or heard.

25          Circumstantial evidence is evidence from which you may

1    infer the existence of certain facts.  Let me give you an

2    example to help you understand what is meant by circumstantial

3    evidence.

4           Suppose today was a bright, sunny day.  It wasn't, but

5    I want you to imagine it was, and you came into the courtroom

6    and all the windows were covered; not with these thin shades,

7    but they were totally covered so that you couldn't even see

8    whether it was day or night outside.  You could see nothing.

9    And then I want you to imagine that the back doors of the

10   courtroom opened and someone walked in with an umbrella and was

11   shaking it off and a few minutes later someone came in with a

12   raincoat and the raincoat was wet around the shoulders.  From

13   those combination of facts you could infer that it had been

14   raining.  Now, you wouldn't know.  You couldn't tell whether it

15   was raining because you couldn't see out the windows.  But you

16   could infere.  It would reasonable and logical for you to

17   conclude.  That's all there is to circumstantial evidence.  You

18   infer on the basis of reason and experience and common sense

19   from one established fact the existence or nonexistence of some

20   other fact.

21          Circumstantial evidence is of no less value than

22   direct evidence.  As a general rule, the law makes no

23   distinction between direct evidence and circumstantial

24   evidence.  It simply requires that your verdict must be based

25   on all of the evidence presented.

            You have had the opportunity to observe the witnesses
in this case.  It's now your job to decide how believable each
witness was in his or her testimony.  You are the sole judges
of credibility of each witness and of the importance of their
testimony.

            You should carefully scrutinize all of the testimony
of each witness, the circumstances under which the witness
testified, the impression the witness made when testifying, and
any other matter in evidence that may help you decide the truth
and the importance of each witness' testimony.

            In other words, in assessing credibility you may size
up a witness in light of his or her demeanor, the explanations
given, and all the other evidence in the case.  Always remember
that you should use your common sense, your good judgment, and
your everyday experiences in life to make your credibility
determinations.

            In deciding whether to believe a witness you may take
account of the fact that a witness is a party to the lawsuit.
You may also take into consideration any evidence of hostility
or affection that the witnesses may have towards one of the
parties.  Likewise, you should consider evidence of any other
interest or motive that the witness may have in cooperating
with a particular party.  You should also take into account any
evidence that a witness or party may benefit in some way from
the outcome of the case.

G4CMNAL2                    Charge

1          It is your duty to consider whether the witness has

2     permitted any bias or interest to color his or her testimony.

3     In short, if you find that a witness is bias, you should view

4     his or her testimony with caution, weigh it with care, and

5     subject it to close and searching scrutiny.

6          Of course, the mere fact that a witness is interested

7     in the outcome of the case does not mean that he or she has not

8     told the truth.  It is for you to decide from your observations

9     from applying your common sense and experience and all the

10    other considerations mentioned whether the possible interest of

11    any witness or party has intentionally or otherwise colored or

12    distorted his or her testimony.  You are not required to

13    disbelieve an interested witness.  You may accept as much of

14    his or her testimony as you deem reliable and reject as much as

15    you deem unworthy of acceptance.

16         If you find plaintiff or defendant made a statement

17    that admitted a material fact, you may consider that statement.

18         In deciding whether such a statement was made, you

19    will apply the rules I've already given you about the

20    evaluation of testimony.  You may accept either party's version

21    of what happened in whole or in part or you may accept a part

22    of the versions given by both.  In deciding how much weight you

23    will give to the statement, if any, you can consider the

24    person's physical condition at the time the statement was made,

25    the words used, the person to whom the statement was made, the

1    time that passed between the making of the statement and the

2    occurrence, and all of the other circumstances and conditions

3    existing at the time and place and the other facts in evidence,

4    as well as the reasonableness of the person's explanation of

5    the statement.  You may consider the statement to be conclusive

6    and binding on the party or you may ignore it altogether, or

7    you may give it a weight between those two extremes, as you

8    find proper under the circumstances.

9           In making this determination, you may consider whether

10   the witness purposely made a false statement or whether it was

11   an innocent mistake, whether the inconsistency concerns an

12   important fact or whether it had to do with a small detail,

13   whether the witness had an explanation for the inconsistency,

14   and whether that explanation appealed to your common sense.

15          It is exclusively your duty, based upon all the

16   evidence and your own good judgment, to determine whether the

17   prior statement was inconsistent, and if so, how much, if any,

18   weight to give to the inconsistent statement in determining

19   whether to believe all, or part of, the witness' testimony.

20          The law does not require any party to call as

21   witnesses all persons who may have been present at any time or

22   place involved in the case or who may appear to have some

23   knowledge of the matters in issue at the trial.  Nor does the

24   law require any party to produce as exhibits all papers and

25   things mentioned in the evidence in the case.  I instruct you

G4CMNAL2                      Charge

1    that you are not to speculate as to why neither side called

2    certain witnesses nor produced certain exhibits.

3           I am now going to instruct you on the substantive law

4    that applies to plaintiff's claim.

5           In this lawsuit plaintiff, Jesseca Naldo, has sued of

6    the defendants, Glaze Teriyaki LLC, Paul Krug, and Dennis Lake,

7    alleging that she was the defendants' employee and that the

8    defendants failed to pay her all wages required by federal and

9    state law and failed to abide by applicable state law rules on

10   wage documentation.

11          Ms. Naldo's first and second claims allege that the

12   defendants violated a federal statute called the Fair Labor

13   Standards Act, or sometimes referred to as FLSA, and New York

14   State law, specifically the New York Labor Law, by willfully

15   failing to pay her minimum wages for all the hours she worked

16   as an employee of the defendant.  Ms. Naldo's third claim

17   alleges that the defendants failed to provide her with accurate

18   wage statements and failed to procure from her a signed

19   acknowledgement of her wage rate as required by New York Labor

20   Law.

21          The defendants deny Ms. Naldo's claims.  They contend

22   that she was not their employee and that they do not owe her

23   any compensation or statutory damages under the FLSA or the New

24   York Labor Law.  Instead they argue that the plaintiff worked

25   as an unpaid intern and/or as an independent contractor.

G4CMNAL2                    Charge

 1          Because the plaintiff has asserted claims falling

 2   under two different laws, it is important that you carefully

 3   consider and evaluate each claim separately.  The plaintiff has

 4   the burden of proving by a preponderance of the evidence all of

 5   the facts necessary to establish the essential elements of each

 6   claim.

 7          Ladies and gentlemen, when you go in the jury room,

 8   you are going to have a verdict sheet that will take you

 9   through step by step what you need to respond to.  So you will

10   have a copy of these instructions and you will also have the

11   verdict sheet with you in the jury room.

12          Plaintiff brings her claim under the FLSA which was

13   enacted by Congress to combat labor conditions detrimental to

14   the maintenance of the minimum standard of living necessary for

15   the health, efficiency, and general well-being of workers.

16   Under FLSA, any employer who fails to pay each of his covered

17   employees minimum wages of a certain rate per hour shall be

18   liable to the employee or employees affected in the amount of

19   their unpaid wages and in an additional equal amount as

20   liquidated damages.

21          I will ask you in the verdict sheet about different

22   time periods that correspond to changes in the rate of pay of

23   the minimum wage, if you get to that point in your

24   deliberations.  There may be some threshold questions that you

25   will answer that will not require you to reach these issues.

1    But if you do reach it, that's how it will work.

2           A covered employee is one who in any workweek is

3    engaged in commerce or in the production of goods for commerce.

4    That's one way to meet the standard.  Or the person is employed

5    in an enterprise engaged in commerce or in the production of

6    goods for commerce.  That's the other way to meet the standard.

7           To sustain her burden on this claim, the plaintiff

8    must prove the following three elements:

9           First, that defendants employed the plaintiff some

10   time between February 2012 and August 2014;

11          Second, that the plaintiff was engaged in commerce or

12   in the production of goods for commerce while employed by the

13   defendants;

14          Third, that the defendants failed to pay the plaintiff

15   the minimum wage for all hours worked by her in one or more

16   weeks during the relevant time period.

17          (Continued on next page)

18

19

20

21

22

23

24

25

G4CTNAL3                    Charge

1           THE COURT:  The first element that plaintiff must

2      prove by a preponderance of the evidence is that she was

3      employed by the defendants during the time period from

4      February 2012 to August 2014.

5           There has been evidence in this case and argument in

6      this case as to whether the plaintiff was an employee or an

7      intern, so I instruct you that FLSA applies only to employees

8      and not to interns.

9           Whether or not a person is an employee or an intern is

10     ultimately determined by whether the intern or the employer is

11     the primary beneficiary of the relationship.  The primary

12     beneficiary test has three features.  First, it focuses on what

13     the intern receives in exchange for her work.  Second, it

14     accords the fact finder flexibility to examine the economic

15     realty as it exists between the intern and the employer.  And

16     third, it acknowledges that the intern-employer relationship

17     should not be analyzed in the same manner as the standard

18     employee-employer relationship because the intern enters into

19     the relationship with the expectation of receiving educational

20     or vocational benefits.

21          In evaluating the nature of the defendants'

22     relationship with the plaintiff, you should examine the

23     totality of the circumstances, including among other things,

24     the following, and I'm going to mention seven things that you

25     should look at as part of the totality of the circumstances:

1              The extent to which the intern and the employer

2     clearly understand there is no expectation of compensation, any

3     promise of compensation, expressed or implied, suggests that

4     the intern is an employee, and vice versa.

5              Two, the extent to which the internship provides

6     training that would be similar to that which would be given in

7     an educational environment, including clinical and other

8     hands-on training provided by educational institutions.

9              Three, the extent to which the internship is tied to

10    the intern's formal education program by integrated coursework,

11    or the receipt of academic credit.

12             Four, the extent to which the internship accommodates

13    the intern's academic commitments by corresponding to the

14    academic calendar.

15             Five, the extent to which the internship's duration is

16    limited to the period in which the internship provides the

17    intern with beneficial learning.

18             Six, the extent to which the intern's work

19    complements, rather than displaces, the work of paid employees

20    while providing significant educational benefits to the intern.

21             And seventh, the extent to which the intern and the

22    employer understand that the internship is conducted without

23    entitlement to a paid job at the conclusion of the internship.

24             No one factor is determinative in making this

25    decision.  Rather, you should consider all of these factors in

G4CTNAL3                    Charge

making your decision.  If you find that the plaintiff was an

intern for the entire period between February 2012 and

August 2014, then your consideration of this case ends and you

must find for the defendants.  On the other hand, if you find

that the plaintiff was an intern for some of that time period

but an employee for another part of that time period, or an

employee for the whole time period, then you should proceed on

with your consideration of the claim.

Similarly, there has been evidence in this case and

argument disputing whether the plaintiff was an employee or an

independent contractor.  I instruct you, like I just did

regarding interns, that the FLSA applies only to employees and

not to independent contractors.  Even if you have determined

that the plaintiff was not an intern, you must still determine

whether she was or was not an independent contractor.

Whether or not a person is an employee or an

independent contractor ultimately is a function of whether the

alleged employee so economic depends on the alleged employer's

business that, as a matter of economic reality, the plaintiff

is not in business for herself.  In evaluating this, you should

look at the totality of the circumstances, including, among

other things -- and now I'm going to name six factors:

One, the degree of control exercised by defendants

that you find to be the plaintiff's employer over the

plaintiff's work.

G4CTNAL3                        Charge

1          Two, the duration and permanency of the relationship

2    between the parties.

3          Three, the skill and independent initiative required

4    to perform the plaintiff's work.

5          Four, the extent of the relative investments of the

6    plaintiff and her employer in the business.

7          Five, the degree to which plaintiff's opportunities

8    for profit and loss depends on her employer; and

9          Six, the degree to which the services rendered by the

10   plaintiff are an integral part of her employer's business.

11         No one factor is determinative in making this

12   decision, rather you should consider all of these factors and

13   any other factor that you deem relevant to the inquiry in

14   making your determination.

15         If you find that the plaintiff was an independent

16   contractor for the entire period of time in question,

17   February 2012 to August 2014, then your consideration of the

18   case ends and you must find for the defendants.  But just as I

19   instructed you before regarding interns, if you find that the

20   plaintiff was an independent contractor for some part of that

21   time period and an employee for other parts of that time period

22   or an employee for the entire time period, then you should

23   proceed on with your consideration of this claim.  To the

24   extent that you find that the plaintiff was an independent

25   contractor or an intern for part of the period from

February 2012 through August 2014, she could not have been an

employee at the same time, and she would not be entitled to

minimum wage pay for any time she was not an employee.

The second element of the claim that the plaintiff

must prove by a preponderance of the evidence is that she was

an employee engaged in commerce or the production of goods for

commerce, or that she was employed by an enterprise engaged in

commerce or the production of goods for commerce.  So she must

satisfy one of those two for the second element.

The term "in commerce" has a broad meaning, and

includes any business, trade, transportation, transmission, or

communication between any place within one state and any place

outside that state.

Now the term "an enterprise engaged in commerce" has a

similarly broad meaning, and includes any enterprise engaged in

trade, transportation, transmission, or communication between

any place within one state and any place outside of that state.

To be "engaged in production of goods for commerce"

means to be involved in producing, manufacturing, mining,

handling, or transporting goods, or in any manner working on

such goods or working in any closely related process or

occupation directly essential to the production of goods for

commerce.  Similarly, the term "enterprise engaged in

production of goods for commerce" means an enterprise involved

in producing, manufacturing, mining, handling, or transporting

1    goods for commerce.

2            In addition, for the plaintiff to qualify as an

3    employee of an "enterprise engaged in commerce or the

4    production of goods for commerce," the enterprise -- here,

5    Glaze Teriyaki -- must have annual gross sales of at least

6    $500,000.

7            The third element of the claim is that the defendants

8    failed to pay the plaintiff the minimum wage required under

9    FLSA.  To prove this element, the plaintiff must establish by a

10   preponderance of the evidence that during part or all of the

11   time period she was employed by the defendants, the defendants

12   paid her less than what was legally due in minimum wages.  The

13   statutory federal minimum wage required to be paid during

14   periods of time relevant to the case was $7.25 an hour.

15           The federal minimum wages that plaintiff should have

16   been paid are calculated by multiplying the number of hours she

17   worked as an employee in each workweek up to 40 hours by the

18   minimum wage applicable to that workweek, here $7.25 an hour.

19   That is a calculation that the Court will do if you answer

20   certain questions on the verdict sheet.  You may never get to

21   the question, but if you do get to the question, the

22   calculation, the arithmetic will be done by the Court on that.

23           If the plaintiff has proven by a preponderance of the

24   evidence that the defendants paid her less than the calculated

25   amount, she has satisfied this element.  But you do need to

G4CTNAL3                    Charge

1    know and you do need to respond to the question of whether the

2    defendants failed to pay plaintiff the federal minimum wage for

3    any hours she worked.

4           The plaintiff bears the burden of proving she

5    performed work for which she was not properly compensated.

6    However, the law requires employers to keep accurate records of

7    the hours each employee works each day and the total hours

8    worked each week.  If you determine that the defendants have

9    failed to reasonably maintain such records, then the plaintiff

10   is permitted to prove the number of hours she worked through

11   other sorts of evidence, and you may determine the number of

12   hours the plaintiff worked based on her recollection and your

13   reasonable inferences drawn therefrom.  In this respect, the

14   plaintiff's recollection must be more than mere speculation,

15   but need not be precise, and may consist solely of an

16   approximation of the hours that she worked.

17          An employee is considered to be working for purposes

18   of this claim whenever she exerts herself, physically or

19   mentally, for a task controlled or required by the employer and

20   performs the task primarily for the benefit of the employer,

21   even if those hours go beyond the employee's scheduled shift.

22   In this regard, waiting for assignment or being or call,

23   waiting for something to happen is also work, as I just defined

24   it, as long as the waiting is a task controlled or required by

25   the employer and the employee is performing that task primarily

1    for the benefit of the employer.

2              If you find that the plaintiff has proven that the

3    defendants are liable to her for unpaid wages, then you will

4    determine or make findings that will enable the Court to

5    calculate the amount of damages.

6              The damages will be the difference between the amount

7    that you find the plaintiff should have been paid under the

8    federal minimum wage and the amount that you find that the

9    defendants actually paid the plaintiff.  So if you get to this

10   point, the questions you're going to be asked will be for the

11   period February 2, 2012 through December 30, 2013, how many

12   weeks, if any, was plaintiff entitled to be paid as an

13   employee.

14             And that same question will be asked for the time

15   period December 31, 2013 through August 2014, how many weeks,

16   if any, was plaintiff entitled to be paid as an employee.

17             Third, you will be asked for each week that you found

18   that plaintiff was employed by defendants, did plaintiff work

19   at least 30 hours each week, yes or no.

20             For the period February 2, 2012 through December 30,

21   2013, how much was plaintiff in fact paid, if anything.

22             And that same question for the period December 31

23   through August 2014.

24             That's how it is structured.

25             If you find that the plaintiff has proven that the

1    defendants are liable for unpaid wages under the statute, under

2    FLSA, the special verdict sheet will ask you to decide whether

3    the defendants acted willfully.  An employer acts willfully if

4    it knew or showed reckless disregard for the question of

5    whether its conduct was prohibited by FLSA.  An employer acts

6    with reckless disregard when it acts or fails to act with a

7    conscious lack of concern for the consequences.

8          If you find that the defendants are liable to the

9    plaintiff for any unpaid minimum wage, the plaintiff is also

10   entitled to liquidated damages equal to the total unpaid wages

11   due under the FLSA, unless the defendants demonstrate that they

12   acted in good faith and had reasonable grounds for believing

13   that they had not violated FLSA.  To establish the requisite

14   good faith, an employer must show that it took active steps to

15   ascertain the dictates of FLSA and then to act to comply with

16   them.

17         Individuals, here Mr. Krug and Mr. Lake, can qualify

18   under FLSA under employers and thus be personally liable for

19   violations of FLSA's minimum wage provisions.  The liability of

20   an individual defendant under FLSA depends on whether that

21   individual possessed the power to control the employee in

22   question.  This power may exist where an individual defendant's

23   role within the company and the decision that such a role

24   entails directly affect the nature or conditions of the

25   employee's employment.  The focus here is on the economic

G4CTNAL3                    Charge

reality of the situation, rather than more technical concepts, and is based on the totality of circumstances.  An individual can be an employer for FLSA purposes even when his or her control over the employee in question is restricted, indirect, or exercised only occasionally.

You may also consider several factors in determining whether an individual defendant is an employer under FLSA.  No single factor is controlling.  Relevant factors include the following four factors:

Did the individual have the power to hire and fire the employee?

Did the individual have the power to supervise and control the employee's work schedules or the power to supervise or control the employee's conditions of employment?

Did the individual have the power to determine the employee's rate and method of payment?

Did the individual have the power to maintain employment records?

You may also take into account whether the individual you are considering had operational control of the corporation that employed the plaintiff, and also you can consider whether they possessed an ownership interest in the employing entity, or whether they controlled significant functions of the business, such as determining employees' salaries and/or making hiring decisions.

1          These factors are not exhaustive.  You may determine

2     that an individual defendant is or is not an employer without

3     finding that they meet or do not meet any or all of these

4     factors.  You may also consider any other factors that you

5     think are relevant to determining whether the individual

6     defendant you are considering had the power to control the

7     means and manner of plaintiff's employment, and thus the

8     individual defendant qualifies as the plaintiff's employer.

9          Now that concludes my instructions on the Fair Labor

10    Standards Act claim.  There are two claims asserted under New

11    York Labor Law, and I must give you instructions on them as

12    well.

13         The plaintiff asserts a claim against the defendants

14    for failure to pay her the minimum wage required by New York

15    State law.  New York law requires that every employer pay to

16    each of its employees for each hour worked the applicable

17    minimum wage.  The elements of this state law claim are similar

18    but not identical to the FLSA claim which I described to you.

19         To sustain the burden of proof with respect to the

20    minimum wage claim under New York Labor Law, the plaintiff must

21    prove the following two elements:

22         That the defendants employed the plaintiff; and

23         Second, that the defendants failed to pay the

24    applicable minimum wage.

25         Just like under the federal law, the first element

that the plaintiff must prove is that she was employed by the

defendants during the period February 2012 through August 2014.

The test for determining whether the plaintiff was an employee

or an intern under New York Labor Law is the same test as it is

under federal law.  The test for determining whether plaintiff

was an employee or an independent contractor under New York

Labor Law, however, is somewhat different than the test under

federal law, and I will explain the state law test.

        The critical inquiry under New York law in determining

whether an individual is an employee or an independent

contractor pertains to the degree of control exercised by the

person who is said to be the employer over the results produced

or the means used to achieve the results.

        So there are five factors under the state law test:

        Did the person work at her own convenience?

        Was she free to engage in other employment?

        Was she on the payroll of one of the corporate

defendants?

        And was she on a fixed schedule?

        Just like under the FLSA, these factors are not an

exhaustive list.  You may consider additional factors on the

issue of the alleged employer's degree of control over the

employee's work.  If you find that plaintiff was an employee

instead of an intern or independent contractor for any period

between February 2012 and August 2014, you should move on to

consider the next element of plaintiff's state law claim.

If you conclude that plaintiff has proven the first element, then you must determine whether the defendants failed to pay her the applicable minimum wage under New York Labor Law.  To prove this element, the plaintiff must establish by a preponderance of the evidence that during part or all of the time she was employed by the defendants, the defendants paid her less than was legally due in minimum wages.  The statutory minimum wages required to be paid under New York law are different than those under federal law.  For any workweek February 2012 and December 2013, the statutory minimum wage under New York law was $7.15 an hour.  For any workweek between December 31, 2013 and August 2014, the statutory minimum wage under New York law was $8 an hour.

The state minimum wages that the plaintiff should have been paid are calculated by multiplying the hours worked as an employee up to 40 hours by the minimum wage applicable to that workweek.  If the plaintiff proves by a preponderance of evidence that the defendants paid her less than the calculated amount, she has satisfied this element.

The plaintiff bears the burden of proving she performed work for which she was not properly compensated.  To aid plaintiffs in meeting that burden, New York law, like federal law, requires employers to keep accurate records of each hour worked and the total hours worked each week.  If you

G4CTNAL3                        Charge

1   determine that the defendants have failed to reasonably

2   maintain such records, New York law, again like federal law,

3   requires that the employer in violation shall bear the burden

4   of proving that the complaining employee was paid wages,

5   benefits, and supplements.

6         So actually in that regard, New York law is somewhat

7   different than FLSA.  I told you before that under FLSA, the

8   plaintiff may testify as to her recollection, it cannot be

9   speculation but it can be based on recollection.  And under New

10  York law, the employer bears the burden of proving that the

11  complaining employee was paid wages, benefits, and wage

12  supplements.

13        If you find that the plaintiff has proven that the

14  defendants are liable to her for unpaid minimum wages, then the

15  Court will again determine what amount of money she is owed.

16  The measure of damages is the difference between the amount you

17  find that she should have been paid under New York law and the

18  amount you find that defendants actually paid plaintiff.

19        New York Labor Law also authorizes the award of

20  liquidated damages in the amount of 100 percent of unpaid wages

21  unless the employer proves a good faith basis to believe that

22  its underpayment of wages was in compliance with law.

23        The third and final claim that the plaintiff brings is

24  that the defendants failed to provide her with accurate wage

25  statements and failed to procure from her a signed

acknowledgment of her wage rate as required by New York Labor

Law.  Again, just like her state minimum wage claim, the

plaintiff is only entitled to recover for missing wage

documentation if she proves by a preponderance of the evidence

that she was defendants' employee.  Thus, you should only

consider the plaintiff's wage documentation claim to the extent

of and during the time periods that you have found that she was

defendants' employee under state law.

Under New York law, an employer is required to furnish

each employee with a statement upon every payment of wages.  It

should include the following information: the dates of work

covered by that payment of wages; the name of the employee;

name of the employer; address and phone number of the employer;

rate or rates of pay and basis thereof, whether paid by hour,

shift, day, week, salary, piece, commission or other; the gross

wages; deductions, allowances, if any claimed; and net wages.

If the plaintiff proved be a preponderance of the evidence that

defendants did not provide her with accurate wage statements,

defendants are liable for statutory damages.

Similarly, an employer must provide a notice to every

employee within ten days of the start of employment containing

the following information: the rate of pay and the basis

thereof; allowances, if any, including tip, meal, or lodging

allowances; the regular payday designated by the employer; the

name of the employer; any "doing business as" names used by the

employer; the physical address of the employer; employer's main
office or principal place of business, and a mailing address,
if different; and the telephone number of the employer.  Each
time the employer provides such a notice to an employee, the
employer shall obtain from the employee a signed and dated
written acknowledgment in English and in the primary language
of the employee of the receipt of this notice, which the
employer shall preserve and maintain for six years.  If the
plaintiff proved by a preponderance of the evidence that the
defendants failed to provide her with such an acknowledgment,
defendants are liable for statutory damages.

        Similar to federal law, the individual defendants,
Mr. Krug and Mr. Lake, can be personally liable for any of the
damages you award the plaintiff under New York law if they
qualify as employers.  In determining whether the individual
defendants are liable as employers under New York law, you
should apply the same economic realities test that I have
previously explained to you in my instructions on federal law.
If Mr. Krug and Mr. Lake are employers under federal law, they
are also employers under New York law.

        Now I have prepared a special verdict form, as I
mentioned, for use in recording your decisions.  Remember, each
verdict must reflect the conscientious judgment of each juror.
You should answer every question except where the special
verdict form indicates otherwise.  You should also proceed

G4CTNAL3                         Charge

1   through the questions in the order in which they're listed.

2            And you will get this to go with you in the jury room.

3   I'm going to give you eight copies of the verdict sheet and I

4   will give you one copy of the jury instructions, but you're

5   only going to return one signed copy of the verdict sheet.  It

6   will be signed and dated by your foreperson.  And it's very

7   important for you to remember that the questions on the verdict

8   sheet must be answered in light of the instructions that I have

9   given you on the law.  So when the questions are asked, you

10  have to remember that the terms that are used are all the terms

11  that were defined in my instructions to you on the law.

12           Now if during the deliberations you want any testimony

13  read, please send out a note indicating the testimony you want

14  to have read back.  Please be as specific as possible.  I'm

15  going to arrange for the exhibits to go into the jury room so

16  you will have those.  And if you want a further explanation of

17  the law as I have explained it to you, you may also request

18  that.

19           Your requests for exhibits or testimony, in fact any

20  communication with the Court, should be made in writing, signed

21  by your foreperson, and given to deputy marshal outside the

22  courtroom.  In any event, do not tell me or anyone else how the

23  jury stands on any issue until after you have reached a

24  unanimous verdict.

25           Many of you have taken notes during the trial.  I want

1   to emphasize to you that notes are simply an aid to memory.

2   Notes that any of you have made may not be given any greater

3   weight or influence in the determination of the case than the

4   recollections or impressions of other jurors, whether from

5   notes or memory, with respect to the evidence presented or what

6   conclusions, if any, should be drawn from such evidence.  Any

7   difference between a juror's recollection and another juror's

8   notes should be settled by asking to have the court reporter

9   read back the transcript, because it's the court record rather

10  than any juror's notes upon which the verdict must be based.

11          It is your duty as jurors to consult with one another

12  and to deliberate with a view to reaching an agreement, and

13  that agreement must be a unanimous agreement.  Each of you must

14  decide the case for himself or herself, but you should do so

15  only after consideration of the case with your fellow jurors,

16  and you should not hesitate to change an opinion when convinced

17  that it is wrong.  Your verdict must be unanimous, but you're

18  not bound to surrender your honest convictions concerning the

19  weight or effect of the evidence for the mere purpose of

20  returning a verdict solely because of the opinion of other

21  jurors.  Discuss and weigh your respective opinions

22  dispassionately, without regard to sympathy, without regard to

23  prejudice or favor for either party, and adopt that conclusion

24  which in your good conscience appears to be in accordance with

25  the evidence and the Court's instructions on the law.

1          Please remember, you're not partisans, you are judges,

2     judges of the facts, not representatives of a cause or

3     constituency.

4          Again, each of you must make your own decision about

5     the proper outcome of the case based on your consideration of

6     the evidence and your discussions with your fellow jurors.  No

7     juror should surrender his or her conscientious beliefs solely

8     for the purpose of returning a unanimous verdict.  If at any

9     point you find yourselves divided, do not inform the Court of

10    what the vote is on the split.  Once you have reached a

11    verdict, do not announce what that verdict is until I ask you

12    to do so in the courtroom.  You will notify the deputy marshal

13    outside the courtroom when you have reached a verdict.

14         Once you get into the jury room, you must select a

15    foreperson who will be responsible for signing all

16    communications to the Court on behalf of the jury and for

17    handing them to the deputy marshal during your deliberations.

18    This should not be understood to mean that an individual cannot

19    send the Court a note should the foreperson refuse to do so.

20         After you have reached a verdict, your foreperson will

21    fill in one original of the special verdict forms, sign it and

22    date it, and advise the deputy marshal that you're ready to

23    return to the courtroom.  Each of you must be in agreement with

24    the verdict that is announced in court.  Once your verdict is

25    announced by your foreperson in open court and officially

G4CTNAL3                        Charge

1    recorded, it cannot ordinarily be revoked.

2                Finally, let me state that your oath sums up your

3    duty, and that is without fear or favor to anyone, you will

4    well and truly try the issues based solely upon the evidence

5    and the Court's instructions as to the law.

6                Ladies and gentlemen, that concludes my instructions.

7    You are now welcome to stand up and stretch for a moment while

8    I see the lawyers at sidebar to see whether I missed or

9    overlooked anything.

10               (Continued on next page)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           (At sidebar)

2           THE COURT:  Anything from the plaintiff?

3           MS. PANAGOPOULOU:  No.

4           THE COURT:  Anything from the defendant?

5           MR. O'DONOGHUE:  The New York Labor Law, you named

6    four out of the five, you didn't say fringe benefits, which was

7    number three.  I don't know that it's material though, Judge.

8           THE COURT:  We have clean copies of the instructions

9    that will be marked as our next court exhibit, Court Exhibit 7.

10          MR. O'DONOGHUE:  I don't think it's a huge issue, I

11   just wanted to raise it.

12          THE COURT:  This is --

13          MR. O'DONOGHUE:  If you look at page 26, you didn't

14   read number three.

15          THE COURT:  Would you like me to do that, or would you

16   prefer that I not?

17          MR. O'DONOGHUE:  I prefer that you did, because I

18   think it's relevant.

19          THE COURT:  All right.

20          MR. O'DONOGHUE:  If it's not too much trouble.

21          THE COURT:  It's not too much trouble at all.

22          MS. PANAGOPOULOU:  Could I say that would be

23   prejudice.

24          THE COURT:  What?

25          MS. PANAGOPOULOU:  I think that would be prejudice to

G4CTNAL3                         Charge

1    our side because you're reemphasizing.

2              THE COURT:  So should I grant a mistrial?

3              MR. NOHAVICKA:  No.

4              THE COURT:  What do you want me to do?  What do you

5    urge I do?

6              MR. NOHAVICKA:  Withdrawn.

7              MS. PANAGOPOULOU:  Withdrawn.

8              THE COURT:  Okay.

9              (Continued on next page)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

G4CTNAL3                          Charge

1          (In open court)

2          THE COURT:  All right.  Ladies and gentlemen, I

3    instructed you on the test for determining whether plaintiff

4    was an employee or an independent contractor under New York

5    Labor Law, and I told you there were five factors.  And you

6    remember I told you they were not an exhaustive list but

7    they're just factors that you should consider in assessing the

8    degree of control over the plaintiff, and I apparently only

9    read you four of the five, so I will try it again, whether the

10   plaintiff worked at her own convenience, whether the plaintiff

11   was free to engage in other employment, whether the plaintiff

12   received fringe benefits, whether the plaintiff was on the

13   payroll of one of the corporate defendants, or whether the

14   plaintiff was on a fixed schedule.

15          So those are the factors that you may consider.

16   Anything else from the defense?

17          MR. O'DONOGHUE:  No, your Honor, thank you.

18          THE COURT:  And you have the special verdict sheet,

19   and you both are in agreement on the special verdict sheet, is

20   that correct?

21          MS. PANAGOPOULOU:  Yes.

22          MR. O'DONOGHUE:  Defendant agrees, Judge.

23          THE COURT:  All right.  I will ask the deputy to hand

24   eight copies of the special verdict sheet and one copy of the

25   instructions to the jurors.

1          And now, ladies and gentlemen you may discuss the case

2     among yourselves.

3          Before that, I'm going to ask the deputy marshal, the

4     court security officer, to step forward to be sworn.

5          (Court security officer sworn)

6          THE COURT:  Now you may retire.  Thank you.

7          (Jury retired to deliberate, time noted:  11:52 a.m.)

8          (Jury not present)

9          THE COURT:  First order of business is for plaintiff's

10    counsel and defendants' counsel to get together on the exhibits

11    that have been received into evidence, and if they're in

12    agreement, you will give them to my deputy who will hand them

13    to the marshal to go in the jury room.  If you're not in

14    agreement, then he will come down and referee any disagreement.

15    That's number one.

16          Number two, I ask that you remain as I call it the

17    eight-minute rule, so it means you can't leave the building but

18    if you want to walk down to the cafeteria, as long as Flo knows

19    how to reach you, and you can work that out with her, or if you

20    want, you can leave someone behind in the courtroom during the

21    deliberations.

22          Lastly, I want to say that I think the lawyers on both

23    sides of this case did something remarkable in very efficiently

24    presenting this case to the jury, which certainly reduces the

25    expense of a jury trial and I think enhances juror

G4CTNAL3                          Charge

1    comprehension.  Cases can get drawn out, and in the middle of a

2    trial it's very easy for a juror, if not a judge, to say where

3    are we, we lost our way, who could possibly know where we're

4    headed in this case at this stage.  So everybody stayed

5    focused, the arguments, the openings and the closings were

6    efficient and put your respective clients' positions with their

7    best feet forward.  So I commend all the lawyers who

8    participated in this trial in doing this in an efficient and

9    effective manner.

10            We are adjourned.  Thank you.

11            (Recess taken)

12            (Continued on next page)

13

14

15

16

17

18

19

20

21

22

23

24

25

G4CMNAL4

1          THE COURT:  We have a note.  It's been marked as Court

2     Exhibit 8 and it reads:  Section A.  Do question 2 and 3 depend

3     on answer to No. 1?

4          I propose to answer the question in a written note

5     back to the jury which will read as follows:  If the answer to

6     question A1 is yes, then you should proceed to answer questions

7     A2 and A3.  If the answer to question A1 is no, then you should

8     proceed to section B.  Any objection from the plaintiff?

9          MS. PANAGOPOULOU:  No, your Honor.

10         THE COURT:  Any objection from the defendant?

11         MR. O'DONOGHUE:  No, your Honor.

12         THE COURT:  This is going to be marked as Court

13    Exhibit 9 and I will ask the deputy to hand this to the deputy

14    marshal.

15         Thank you all very much.

16         (Recess pending verdict)

17         THE COURT:  I have an envelope that was received at

18    1:25.  It says verdict and it is signed and dated by the

19    foreperson.  I will mark it as Court Exhibit 10 and have the

20    jurors brought in, please.

21         (Jury present)

22         THE COURT:  Will the foreperson please identify

23    themselves.  If you will please stand.  Has the jury reached a

24    verdict?

25         THE FOREPERSON:  Yes, we have.

G4CMNAL4

1           THE COURT:  Is it unanimous?

2           THE FOREPERSON:  Yes, it is.

3           THE COURT:  It is reflected on the verdict sheet which

4   you have signed and dated?

5           THE FOREPERSON:  Yes, it is.

6           THE COURT:  Madam Deputy, if you'll return the verdict

7   to the foreperson and take the verdict.

8           THE DEPUTY CLERK:  Was plaintiff an employee of the

9   defendants within the meaning of federal law, yes or no?

10          THE FOREPERSON:  No.

11          THE DEPUTY CLERK:  Was an plaintiff an employee of the

12  defendant, within the meaning of New York law?

13          THE FOREPERSON:  No.

14          THE COURT:  If you please retrieve the original

15  verdict sheet, Madam Deputy, and poll the jury.

16          (Jury polled; jury answered in the affirmative)

17          THE COURT:  The verdict will be recorded.  Any

18  objection from the plaintiff to my discharging the jury?

19          MS. PANAGOPOULOU:  No, your Honor.

20          THE COURT:  Any objection from the defendant?

21          MR. O'DONOGHUE:  No.  Thank you, your Honor.

22          THE COURT:  Ladies and gentlemen, I want to tell you

23  the story of a judge who sat on this court for many years.  He

24  sat for well into his eighties and his name was Edward

25  Weinfeld.  And he had a very unusual custom at the end of a

1    jury trial.  He would say to the jurors, I will not thank you

2    for your service.  And it struck everybody as odd and peculiar

3    and he went on to explain.  Because you didn't come here to do

4    a favor for me or a favor for the parties.  You came here

5    because this is one of the obligations, privileges, and duties

6    of American citizenship.  It is one of the most direct ways

7    that you can participate in the affairs of government.

8            We could have a system like other countries have where

9    someone with a black robe, a professional jurist, decides a

10   dispute of this sort.  And however that case was decided, there

11   would be someone with some lingering doubt and question in

12   their mind.  Who appointed that judge?  What political party

13   does he belong to?  What are his beliefs and values?  And it

14   would always be open to some form of questioning, even if the

15   judge did his or her honest best on the problem.

16           But we have a system where the eight of you who come

17   from different geographic areas within this very large

18   district, who come from different walks of life, different

19   occupations, people who might never have met one another but

20   for your jury service here.  Before yesterday morning you were

21   total strangers and yet the eight of you come together, listen

22   to the evidence in a dispute that relates to total strangers

23   and reach a unanimous verdict.  It's not an exaggeration to

24   say, I am in awe of that.  You can be in awe of it as well.

25           And everything I'm saying to you I would say to you if

G4CMNAL4

1    your verdict was something else, if you had found a different

2    way on your verdict sheet.  I express no opinion on that.  But

3    the whole concept of eight people coming together, having a

4    dispute which the parties were unable to resolve among

5    themselves, this is a great system that we have been handed by

6    others and it is up not just to me, but also to you to keep

7    this system alive by coming and serving.

8             I know it's very disruptive.  I had other things that

9    you were planning to do.  You're kept in a courtroom.  You're

10   kept waiting at times, etc.  This is a remarkably brief trial

11   and that is a good thing.  But we are heading into the warm

12   weather and you are going to be going to barbecues, maybe

13   Memorial Day, maybe the 4th of July, running into family

14   members and friends and neighbors.

15            And I certainly don't want you to be unkind or mean to

16   anyone, but when you are at one of these barbecues, I wouldn't

17   be at all surprised if you run into somebody who tells you how

18   they beat their way out of jury duty or how they are planning

19   on beating their way out of jury duty.  And I want you to think

20   of your own service in this case and think about the jurors who

21   serve in this courthouse on trials that go on for weeks and

22   sometimes for months.  And I ask that you think of me when you

23   hear this and let that otherwise good person know that you

24   don't find that one bit funny.  You don't find that one bit

25   funny or any different than somebody telling you that they

G4CMNAL4

1    cheated on their taxes or planned to cheat on their taxes.

2    This is a privilege of citizenship and you, ladies and

3    gentlemen, having done your duty, and you can go forward for

4    the rest of your lives knowing that you performed this very

5    important duty.  I congratulate you for that.

6              Now, as I said, after the case is over you are free to

7    discuss it with anyone you want.  You are also free not to

8    discuss it.  And some folks find that where they draw the line

9    is if they are talking to family or friends, they will talk

10   about what they saw in the courtroom, what the lawyers did,

11   what the judge did, what the setup was, what the testimony was.

12   But many people choose to draw the curtain closed on what was

13   said between and among the jurors during the deliberation

14   process and keep that private to themselves.  You have to make

15   your own decision on that, but I just alert you to that.

16             With that, ladies and gentlemen, with my deep

17   admiration for your service, you are now discharged and free to

18   go.  Thank you, ladies and gentlemen.

19             (Jury discharged)

20             THE COURT:  Anything further from the plaintiff?

21             MS. PANAGOPOULOU:  No, your Honor.

22             THE COURT:  Anything further from the defendant?

23             MR. O'DONOGHUE:  No.  Thank you, Judge.

24             THE COURT:  Thank you.  We are adjourned.

25             (Trial concluded)